UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST 2005-FF5 ASSET-BACKED CERTIFICATES, SERIES 2005-FF5 ) ) ) ) ) ) | Case No: 11-C-762 |
| Plaintiff, ) ) | Judge: Robert W. Gettleman |
| v. ) ) ) | Magistrate Judge: Sheila M. Finnegan |
| KATHLEEN J. SCHULZE, *et al*., ) ) | |
| Defendants. ) ) | |

**REPLY IN SUPPORT OF DEFENDANTS KATHLEEN J. SCHULZE'S
AND MICHAEL W. SCHULZE'S MOTION FOR SUMMARY JUDGMENT**

Defendants Kathleen J. Schulze and Michael W. Schulze (referred to sometimes collectively herein as "Schulze Defendants") reply to Plaintiff's Response to Motion for Summary Judgment as follows:

**Factual Predicate**

Schulze Defendants filed their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, demonstrating that this action has twice previously been filed and voluntarily dismissed, as a consequence of which the Plaintiff is barred as a matter of law from enforcing the promissory note underlying the mortgage on the property pursuant to the Illinois "single refiling" rule. In support, the Schulze Defendants attach a Statement of Material Facts

pursuant to LR 56.1(a)(3) supported by the affidavits of Kathleen J. Schulze (Exhibit A), and Michael W. Schulze (Exhibit B).

Plaintiff responded by complaining that the complaints in the prior cases were not incorporated into the Motion, by citing a plethora of Illinois procedural rules and statutes, several of which are not binding on this United Stated District Court.

Plaintiff also complains that in 2009 (after the initial 2008 foreclosure action had already been filed and voluntarily dismissed, inexplicably) the Schulze Defendants entered into a modification agreement concerning the mortgage loan in default, and that they reinstated the mortgage under Section 15-1602 of the Illinois Mortgage Foreclosure Law, Ch. 735 ILCS Section 5/15-1602 ("IMFL"), all of which precipitated the *second* voluntary dismissal. Plaintiff urges this Court to treat this third action before this Court as a *new* action based upon a distinct breach of the *modification agreement*, and as a *fresh* action based upon the prior reinstatement since, according to Plaintiff, there is no "cap on the amount of times [reinstatement] can occur in the life of a loan." (*Response*, page 10). (Plaintiff also avers that "the IMFL allows a mortgagor to reinstate the loan, without limitation as to the number of times this can occur[.]" (Response, page 9). Though not revealed by Plaintiff, Section 15-1602 of the IMFL places significant limitations on the unilateral right of mortgagors to statutory reinstatement).

Shulze Defendants will demonstrate that the evidentiary materials, their Affidavits, brought forth under the original Motion for Summary Judgment demonstrated positively the applicability of the double re-filing prohibition, and that a comparison of the complaints in the three subject actions shows that they are substantially identical re-filings of one another. Shulze Defendants will demonstrate that the First Amended Complaint in this action is indistinguishable

from its predecessors filed and dismissed in 2008 and 2009, and that it makes no mention of either a modification agreement or reinstatement under Section 15-1602. Finally, Schulze Defendants will show the portion of the reinstatement statute, Section 15-1602 of the IMFL, discussion of which is tactically *avoided* by Plaintiff, which significantly *limits* a mortgagor's use of the statutory right of reinstatement, such that the right of reinstatement could have had no bearing on the riot of filings and refilings accomplished by Plaintiff between 2008 and 2011, when this action before the Court was filed.

**I. Plaintiff's Lack of Compliance with Local Rule 56.1 requires admission as uncontested of Schulze Defendants' Statement of Uncontested Material Facts.**

Local Rule 56.1 provides that when a movant (Schulze Defendants) sets forth its statement of undisputed material facts, the opposing party (Plaintiff) shall file:

**(3)** a concise response to the movant's statement that shall contain:
**(A)** numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
**(B)** a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
**(C)** a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Absent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

Local Rule 56.1(b)(3).

Plaintiff admitted most of Schulze Defendants' statements in its Supplement Response to LR 56.1 Statement of Defendants (filed as a LR 56.1(b)(3)(B) response), but attempted to raise affirmative matters in its response, without filing its own LR 56.1(b)(3)(C) statement. Schulze Defendants submit that the affirmative matters attempted to be raised by Plaintiff's Affidavit and

evidentiary materials should not be considered, and that Schulze Defendants' statements of fact which are not explicitly denied (with references to evidentiary materials and supporting record in comport with LR 56.1(b)(3)(B)) should be admitted. "'[W]e have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.' *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) (quotation omitted); see also *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004)." *Benuzzi v. Bd. of Educ. of the City of Chicago*, 647 F.3d 652, 654-5 (7th Cir. 2011).

Set against Plaintiff's baffling attempts to invoke *Illinois* procedural rules against Schulze Defendants, including Illinois Supreme Court Rule 191 and Section 2-1005 of the Code of Civil Procedure (Ch. 735 ILCS Section 5/2-1005), this Court should not hesitate to enforce Local Rule 56.1 against Plaintiff, and thus strike and ignore her Affidavits and evidentiary material which is not incorporated into a LR 56.1(b)(3)(C) statement of facts.

**II.     Comparison of the Complaints in the prior actions filed in the Circuit Court of Cook County with the First Amended Complaint in the present case demonstrates that all three actions are identical.**

Plaintiff urges this Court to find a May 4, 2009 modification agreement imputed to the Schulze Defendants, and reinstatement of the mortgage purportedly under the auspices of Section 15-1602 of the IMFL (for which there is no evidentiary support whatsoever, leaving aside issues of LR 56.1 compliance), render the 2009 action distinct from the current action to which this Motion is directed. (*Response*, pages 5-6). The Affidavit of Vanessa Lewis is offered by Plaintiff to substantiate the modification agreement, but it can be ignored: it is not mentioned *anywhere* in the First Amended Complaint in this action before this Court. A copy of the First

Amended Complaint is attached hereto as Exhibit A to Affidavit of Michael Greco, Supplemental LR 56.1(a)(3) SUF no. 1.  The First Amended Complaint, filed in June, 2015, a mere four months prior to filing of the Motion for Summary Judgment, indicates plainly that the action is based upon the Schulze Defendants' execution of a mortgage on February 5, 2005, in the initial principal sum of $495,000.00 in favor of Plaintiff's predecessor in interest, and default in payments on that mortgage.  (*First Amended Complaint*, Ex. A, para. 9).  There is no mention whatsoever of a modification agreement, prior reinstatement, or dates when mortgage loan payments were allegedly made or missed, anywhere in the pleading.

The First Amended Complaint is in this respect identical to the 2008 Complaint.  (A copy of the Complaint in Case No. 08 Ch 9443 is attached hereto as Exhibit B to Affidavit of Michael Greco, Supplemental LR 56.1(a)(3) SUF no. 2).  Para. 3 of the 2008 Complaint contains information identical to Para. 9 of the First Amended Complaint in this case:  the 08 Ch 9443 action is based upon the Schulze Defendants' execution of a mortgage on February 5, 2005, in the initial principal sum of $495,000.00 in favor of Plaintiff's predecessor in interest, and default in payments on that mortgage.  (*Complaint*, Ex. B, para. 3).  There is no mention whatsoever of a modification agreement, prior reinstatement, or dates when mortgage loan payments were allegedly made or missed, anywhere in the pleading.

Finally, both the 2008 Complaint and the First Amended Complaint in the case at bar are identical to the 2009 Complaint, which Plaintiff appended to its Response as Exhibit A, Document 52-2 filed in this case.  Para. 3 of the 2009 Complaint contains information identical to Para. 3 of the 2008 Complaint and to Para. 9 of the First Amended Complaint in this case:  the 09 Ch 8417 action is based upon the Schulze Defendants' execution of a mortgage on February

5

5, 2005, in the initial principal sum of $495,000.00 in favor of Plaintiff's predecessor in interest, and default in payments on that mortgage. (*Response*, Ex. A, para. 3). There is no mention whatsoever of a modification agreement, prior reinstatement, or dates when mortgage loan payments were allegedly made or missed, anywhere in the pleading.

In fact, the only distinguishing averments of any of the three pleadings in the 2008, 2009 and present actions are the identified dates of default and the sums claimed owed. This is not sufficient to make the three actions distinct for purposes of applying the single refiling limitation. Default in payments of the same loan instrument secured by the same parcel of real estate at different times will naturally result in different figures being claimed as the amount in default. This does not make the mortgage foreclosure actions distinct – there is no claim in the First Amended Complaint in this which identifies a default, wrong or breach separate from those averred in the 2008 or 2009 complaints. The defaults are just measured, by Plaintiff according to its own self-serving procedures, from different time periods (which happen to be later in each succeeding action, as time progresses and alleged defaults continue).

Plaintiff identifies a continuing wrong theory, supposedly giving rise to new, distinct actions as loan payment defaults persist, citing *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S. Ct. 865, 99 L. Ed. 1122 (1955) and other non-precedential decisions. *Lawlor*, an interesting antitrust decision in which legendary advocate Louis Nizer was defeated, involved intentional breaches of a motion picture licensing agreement to the end of creating a monopoly, resulting in litigation and settlement in 1942, followed by additional, distinct, alleged intentional misconduct:

"In their present complaint, petitioners allege that the settlement of the 1942 suit was merely a

6

device used by the defendants in that case to perpetuate their conspiracy and monopoly. They also allege: that *five other producers have joined the conspiracy since 1943*; that National Screen has deliberately made slow and erratic deliveries of advertising materials under the sublicense in an effort to destroy petitioners' business; and that for the same purpose National Screen has used tie-in sales and other means of exploiting its monopoly power.1 Petitioners seek damages for resulting injuries suffered from August 16, 1943 in other words, for a period beginning several months after the dismissal of the 1942 complaint."

*Lawlor v. National Screen Service Corp.*, 349 U.S. at 325. (Emphasis added).

The addition of five conspirators to the monopolistic conduct, if proved, could amply justify treatment of the two suits as distinct causes of action – application of *res judicata* in that case would shield wrongdoers from liability for their culpable, allegedly intentional, conduct. No such result is likely in this case, where Plaintiff continued to file and voluntarily dismiss mortgage foreclosure actions, even though the Schulze Defendants' alleged defaults persisted apace.

A more recent Supreme Court pronouncement requires treatment of the alleged ongoing defaults as part of a single cause of action, regarding of separable acts or cumulative damages. In *Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618 (2007), Lillie Ledbetter famously sued her employer for Title VII pay discrimination and violation of the Equal Pay Act of 1963 (EPA), 29 U. S. C. §206(d).  Her action was deemed barred by the 300-day Title VII filing deadline to file a charge in though Equal Employment Opportunity Commission ("EEOC") because the violations had occurred for a longer period than 300 days prior to Ledbetter's EEOC filing, *even though she filed promptly after she learned of the facts amounting to her claim of violation*.  Congress has since acted to readjust the effects of this decision, but the logic of it is hardly less compelling as applied to Plaintiff, who has experienced alleged defaults in the mortgage loan payments by the Schulze Defendants since at least January, 2008, according to its

7

filing.

There is no basis for finding this action to be distinct from the 2008 action or 2009 action under *Lawlor* or *Ledbetter*, or any of the other decisions cited by Plaintiff.

Plaintiff refers to the "single group of operative facts" test, as well as the "transactional" test, in an attempt to attenuate the present action from the 2008 and 2009 actions. The complaints in the three actions contradict this argument, however, as it is obvious that all three actions are based upon precisely the same mortgage, parties, defaults in payment and consequent damages. Moreover, while not conceding that the Plaintiff's Exhibits may be considered under LR 56.1, Schulze Defendants note that there is *no mention whatsoever* of reinstatement of the mortgage or of dismissal or forbearance of any of the pending or future mortgage foreclosure actions in *either* the Modification Agreement (Plaintiff's Exhibit B-1, Doc. 52-3) or the Demand Letter (Plaintiff's Exhibit B-2, Doc. 52-3). Even if considered by the Court, the utility of these documents is minimal; in fact they actually *contradict* Plaintiff's argument that the present action is distinct from the 2009 action.

The identity of the successive actions is beyond dispute – as Plaintiff's argument reveals, *only* the dates from which alleged payment defaults are calculated and the amounts of the defaults are distinct. This is completely consistent with an ongoing default in the mortgage loan payments. There is no distinction for res judicata or single refiling limitation purposes between the 2008 action, the 2009 action, and the present action.

**III. There is no evidence that Schulze Defendants have ever exercised a Section 15-1602 reinstatement; Plaintiff's assertion that the statutory right to reinstate is unlimited is contradicted by the statute.**

Inscrutably, Plaintiff devotes significant attention to the spector of statutory reinstatement

8

under Section 15-1602 of the IMFL. Leaving aside the issue of compliance with LR 56.1, there is absolutely no evidence that Schulze Defendants have ever exercised the right to reinstate the mortgage under Section 15-1602.

Plaintiff appears to be urging that the possibility of multiple exercises of this statutory right of redemption could, hypothetically, compromise mortgagee plaintiffs' rights in other cases. Plaintiff's argument is prefixed on its suggestion that the statutory right to redemption is unlimited – a suggestion which is false and belied by the language of the statute itself.

Plaintiff quotes Section 15-1602 "in relevant part" on page 3 of its *Response*. This excerpt omits a significant portion of that statute. Section 15-1602 in fact provides as follows:

Sec. 15-1602. Reinstatement. In any foreclosure of a mortgage executed after July 21, 1959, which has become due prior to the maturity date fixed in the mortgage, or in any instrument or obligation secured by the mortgage, through acceleration because of a default under the mortgage, a mortgagor may reinstate the mortgage as provided herein. Reinstatement is effected by curing all defaults then existing, other than payment of such portion of the principal which would not have been due had no acceleration occurred, and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults, provided that such cure and payment are made prior to the expiration of 90 days from the date the mortgagor or, if more than one, all the mortgagors (i) have been served with summons or by publication or (ii) have otherwise submitted to the jurisdiction of the court. When service is made by publication, the first date of publication shall be used for the calculation. Upon such reinstatement of the mortgage, the foreclosure and any other proceedings for the collection or enforcement of the obligation secured by the mortgage shall be dismissed and the mortgage documents shall remain in full force and effect as if no acceleration or default had occurred. ***The relief granted by this Section shall not be exhausted by a single use thereof, but if the court has made an express written finding that the mortgagor has exercised its right to reinstate pursuant to this Section, such relief shall not be again available to the mortgagor under the same mortgage for a period of five years from the date of the dismissal of such foreclosure.*** The provisions of Section 9-110 of the Code of Civil Procedure shall be inapplicable with respect to any instrument which is deemed a mortgage under this Article. The court may enter a judgment of foreclosure prior to the expiration of the reinstatement period, subject to the right of the mortgagor to reinstate the mortgage under this Section.

735 ILCS 5/15-1602. (Emphasis added).

Notably, Plaintiff *omitted* the portion of Section 15-1602 in which it could block mortgagors from serial reinstatements, and limit them from reinstating their mortgages for a *five-year period*, by securing from the court a "written finding that the mortgagor has exercised its right to reinstate pursuant to this Section[]" – in other words, by *enforcing mortgagors' obligations*. Plaintiff's practice of instead dismissing actions voluntarily, without any such parameters, stipulations or findings, is within Plaintiff's rights, but it *cannot be used to end-run the single-refiling limitation of Section 13-217 of the Illinois Code of Civil Procedure*.

Plaintiff's omission to discuss this limitation in its Response is understandable: enforcing Section 15-1602 would mean that, once Schulze Defendants had exercised the reinstatement right, they could not do so again for *five years*. Such a practice would have spared the Plaintiff the second filing, as it could have simply proceeded to entry of judgment and foreclosure decree, if it could establish its right to that remedy.

Plaintiff did not do so, instead filing *three identical* actions within a *four-year period*. Plaintiff is in no way incommoded by the supposed expansiveness of the statutory right to reinstate – its argument on this point is a canard.

For these reasons, Plaintiff's argument for treatment of the present case as distinct from the 2008 and 2009 actions between the same parties falls far short of resisting application of the single refiling limitation rule. Summary judgment should be granted in favor of Defendants.

11

Wherefore Defendants Kathleen J. Schulze and Michael W. Schulze respectfully request that this Court enter summary judgment in their favor against Plaintiff The Bank of New York Mellon f/k/a The Bank of New York as Successor in Interest to J.P. Morgan Chase Bank, N.A., As Trustee For First Franklin Mortgage Loan Trust 2005-FF5 Asset-Backed Certificates, Series 2005-FF5, dismissing the Complaint to Foreclose Mortgage with prejudice and with Defendants' costs awarded to them and taxed against Plaintiff.

Respectfully submitted,

Kathleen J. Schulze and Michael W. Schulze,

By: _/S/__ Michael J. Greco _____
Gregg Rzepczynski, Michael J. Greco
Attorney for Defendants Kathleen J. Schulze
and Michael W. Schulze

Gregg Rzepczynski
The Rzepczynski Law Group
Michael J. Greco
Attorneys for Defendant Kathleen J.
Schulze and Michael W. Schulze
175 W. Jackson Blvd. Ste. 240
Chicago, Illinois 60604
TEL: (312) 939-8028
Atty. No. 6200348
Atty. No. 6201254
Email: AttyGMR@gmail.com